UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06CV-450-H

GREAT AMERICAN INSURANCE COMPANY                                    PLAINTIFF

V.

LAWYERS MUTUAL INSURANCE                                            DEFENDANT
COMPANY OF KENTUCKY

**MEMORANDUM OPINION**

Plaintiff Great American Insurance Company ("Great American") provided a defense and indemnification for malpractice claims against Paul Paletti which arose in 1998. Now Great American seeks contribution from Defendant, Lawyers Mutual Insurance Company of Kentucky ("LMICK") for a portion of it. The case appears to turn on the analysis of two contractual provisions: Great American's "excess" clause and LMICK's "escape" clause.

No Kentucky court has considered similar clauses in precisely these circumstances. Therefore, this Court must "analyze the indications and determine the path that [the] state would follow," were Kentucky courts to decide the issue. *Overstreet v. Norden Lab.*, 669 F.2d 1286, 1290 (6th Cir. 1990). To do so, this Court must look to the language of the respective policies, the available guidance from Kentucky courts and the general policy of the state. All three of these factors suggest that the Great American policy assumed the primary risk of the malpractice claims against Paletti for acts committed while he was an employee of Seiller & Handmaker and that LMICK's policy properly excluded this risk and its obligation to defend or indemnify accordingly.

I.

This insurance coverage dispute arises from a legal malpractice action that William Frederick Conway filed against Paletti and law firm of Seiller & Handmaker LLP ("S&H") in 2000 (the "Conway lawsuit"). The acts or omissions giving rise to the Conway lawsuit occurred in 1990 and 1991, when Paletti was associated with S & H. Some time after 1991, Paletti left S&H and had become a member of the law firm Sturm, Paletti & Wilson ("Sturm & Paletti"). In April of 1999, Paletti received notice of the claims giving rise to the Conway Lawsuit. Paletti notified both LMICK and Great American of the claims. Later, Conway sued both S&H and Paletti.

Both Great American and LMICK issued "claims-made" insurance policies at about the same time and for virtually identical policy periods. S&H obtained its professional liability coverage through Great American. Its "claims-made" policy ran from July 15, 1998 to July 15, 1999. Sturm & Paletti obtained its coverage through LMICK. Its "claims-made" policy ran from July 20, 1998 to July 20, 1999. The relevant provisions of the two policies are summarized as follows:

| Great American Policy | LMICK Policy |
|---|---|
| **(A.) 11. You, Your,** or **Insured Means**<br>...<br>B. Any past of present partner, principal, shareholder, member, officer, director, "of counsel" or employed lawyer of the **Named Insured** or a **Predecessor Firm**, but only while rendering **Professional Services** in the course and scope of his or her duties on the behalf of the **Named Insured** or a **Predecessor Firm** | **(II.)** D. The **Insured** means<br>    1. The Named Insured<br>    2. Any lawyer or professional legal corporation who was a former partner, officer, director, employee, or associate of the firm or Predecessor Firm(s) solely while acting in a professional capacity on behalf of such firms<br><br>E. The **Named Insured** means the firm or persons named in the Declarations, or any lawyer or professional legal corporation who is or during the Policy period becomes a partner, officer, director, employee, or associate of the firm. |
| **(A.)**<br>Whenever used in this policy, the term<br>1. **Claim** means any demand received by **you** for money or services (a) arising out of **your** acts, errors or omissions in providing **Professional Services**; or (b) for **Personal Injury** arising out of **your** performance of **Professional Services.** | This is a claims-made policy.  Coverage is limited to liability for only those claims that are first made against the insured and reported to the company during the policy period. |
| **B. WHAT IS COVERED**<br>Subject to all terms and conditions of this policy, **we** will pay on **your** behalf all **Damages** and **Claim Expenses** arising out of a **Claim** or **Early Reported Incident** which **you** first become aware of and **you** report to **us** in writing during the **Policy Period**. | **(I.)** A. **Professional Liability and Claims-Made Clause**: The Company agrees to pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as Damages and Claim Expenses as a result of CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD by reason of:<br><br>    1. Any act, error, or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors, or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as a lawyer, title insurance agent or notary public |

| **(H.) 4. Other insurance:** This policy is excess over any other insurance, whether collectible or not, available to an Insured and applicable to a Claim, whether such insurance is stated to be primary, pro rata, contributory, excess, contingent, or otherwise.  This provision will not apply to other insurance written specifically as excess of this policy's limits." | **(I. A.)** PROVIDED ALWAYS THAT as to 1, 2, or 3 above, such act, error, omission, or such Personal Injury occurred:<br>    (a) during the Policy period, or<br>    (b) prior to the Policy Period, provided that prior to the effective date of this policy:<br>(1) the Insured did not give notice to any other insurer of any such act, error, omission, or Personal Injury, and<br>(2) the Insured had no basis to believe that the Insured had breached a professional duty or committed a Personal Injury, and<br>(3) there is no other policy, or policies which provide insurance for such liability or Claim.<br><br>**(VI.B.) Other insurance:** The insurance provided by this policy shall be in excess of the amount of the deductible and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent, or otherwise unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy. |

For our purposes, it is important to note that both the Great American and LMICK policies contain virtually identical "excess" clauses.  Only the LMICK policy contains an "escape" clause.

In 1998, after Paletti notified both insurance companies about the Conway lawsuit, Great American assumed the costs both of the defense and the ultimate settlement of the case.  LMICK declined to provide a defense or coverage.  Eventually, Great American paid the policy limits of $2,000,000 to defend and settle the Conway lawsuit.  After resolving the underlying claim, Great American filed this action seeking contribution.  LMICK has moved to dismiss.   None of the relevant facts are disputed.  The Court must now predict how Kentucky courts would analyze these competing contractual provisions.

III.

The Court's first task is to define the coverage that each policy provides for the claims made in the Conway lawsuit.  Because Paletti's insured status is slightly different under each policy for claims made in 1998, the policies provide coverage in slightly different ways.  Only after the Court defines the nature of each coverage does the operation of the "excess" or "escape" clauses become relevant.

The plain language of the Great American policy provides primary coverage for the Conway lawsuit claims.  S&H is the "named insured" under the policy.  Paletti is covered as a "past . . . employed lawyer" of the insured firm.  The alleged negligence is a covered event because it occurred while Paletti performed work  "in the course . . . of his duties on the behalf of" S&H.  Finally, the claim was made during the policy period.  Thus, the Conway claims against Paletti represent precisely the risk that Great American agreed and anticipated to defend and indemnify on behalf of S&H and its former employees, such as Paletti.[1]  The purpose of the excess clause is to limit Great American's primary risk where an insured has other applicable insurance coverage.  The Court will look to the impact of this clause later.

Paletti also qualifies as a named insured under the LMICK policy because he was an employee at the time the claim was made.  However, the LMICK policy escape clause sets specific limitations on coverage for negligent acts such as this, which occurred prior to the policy period in circumstances where LMICK or its primary insured, Sturm & Paletti, had less

---

[1] On the other hand, Great American covers former employees, such as Paletti, only to the extent that the claims arose from work on behalf of S&H.  Great American appears to argue that it provides coverage for former employees "who are actually employed during the time that the claim in question is made."  The policy simply does not state this limitation, nor would it make any sense to impose such a contradictory interpretation.  The policy expressly covers past employees for acts while in the employ of S&H.  By definition a past employee is not employed at the time the claim is made.

knowledge of the risk.  For instance, one purpose of this clause is to avoid coverage for risks that occurred with previous law firms.  The claims against Paletti concerning acts while employed with S&H fit precisely this category.   The LMICK policy affords coverage only for those prior acts that – for whatever reason – might not be covered by the insured's prior carrier.  Another purpose of LMICK's escape clause would assure a continuous line of coverage for persons such as Paletti, who change law firms and professional insurance carriers in mid-career, or who may not have continuing coverage for past acts with other law firms.  For instance, the LMICK policy would provide coverage for Paletti had S&H disbanded or, for some reason, dropped its insurance coverage.

Thus, the LMICK policy affords a more constrained coverage than the Great American policy.  It does so by limiting actual coverage, rather by merely limiting the amount of liability. Now, the Court analyzes the plain language of the relevant clauses, the pertinent Kentucky case law and the policy considerations, to determine coverage in our circumstances.

### A.

Counsel for both sides make persuasive arguments regarding the relative merits of "escape" versus "excess" clauses.  An excess clause is generally enforceable under Kentucky law. *See Chicago Ins. Co. v. Travelers Ins. Co.*, 967 S.W.2d 35 (Ky. Ct. App. 1998).  Here, both policies contain such a clause.  Their purpose is to limit benefits to those amounts in excess of any other available insurance coverage.  Kentucky courts have held that where two competing excess clauses clash and where both policies provide coverage, the excess clauses are deemed mutually repugnant and each policy should provide pro rata coverage.  *Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671, 674-75 (Ky. 1974); *Gov't Employees Ins. Co.*

*v. Globe Indem. Co.,* 415 S.W.2d 581, 582 (Ky. 1967) ("*Government Employees*").  If the two excess clauses cancel one another, as Kentucky law provides, then LMICK's liability rises or falls upon the enforceability of its escape clause.

An escape clause is fundamentally different than an excess clause.  It actually defines the scope of LMICK's coverage.  It precludes coverage altogether where the occurrence is outside the policy period and another coverage applies to that risk.[2]  Thus, it excludes coverage for a liability incurred in a prior employment and likely covered by another primary policy.  As anticipated in these circumstances, Paletti did have such coverage through Great American, for claims arising from his past acts while a S&H employee.  Thus, the plain language of LMICK's own policy appears to exclude those risks from its coverage of Sturm & Paletti in these circumstances.[3]

Therefore, the Court concludes that the actual language of the insurance policies suggest that Great American has the primary coverage, and that LMICK, having successfully anticipated the likely existence of such coverage, excluded that risk from its own coverage.

## B.

The leading Kentucky case on "escape" clauses, *Government Employees*, is not directly on point.  In fact, neither this case nor any others provide a comprehensive legal analysis of such

---

[2] If one were to read these two policies consistently together, Great American would own the risk here because the LMICK "escape" coverage clause controls over Great American's "excess" liability clause.  The Great American excess clause merely limits risk on existing coverage, while the LMICK escape clause defines coverage.

[3] It goes without saying that if Paletti committed prior professional malpractice for which no insurance coverage was available, the escape clause would be inoperable and LMICK would cover the risk.  It is also interesting to note that had Sturm and Paletti obtained coverage through a carrier with policy language identical to Great American, that policy also would not cover the loss.  This is so because the Great American policy only covers the acts of current or past employees while working for S&H.

7

clauses.  Nevertheless, the underlying logic in *Government Employees* is instructive.

There, the automobile accident in question was arguably fully covered by two separate insurance policies.  *Id.* at 581.  One policy had an "escape" clause and one had an "excess insurance" clause.  *Id.*  A non-standard escape clause is one which specifically contemplates the existence of other insurance coverage.[4]  In *Government Employees* a "non-standard" escape clause (expressly anticipating the possibility of the existence of an "excess insurance" clause) constituted a "valid, express condition against liability."  *Id.* at 582.  Thus, Kentucky courts will enforce an "escape" clause that clearly contemplated the circumstances at hand.  *See also Empire Fire and Marine Ins. Co. v. Haddix*, 927 S.W.2d 843, 845 (Ky. Ct. App. 1996) (stating that "where two insurance companies are contesting primary liability, and one policy contains a non-standard escape clause while another contains an excess clause, the escape clause prevails over the excess clause ").

Great American argues that none of these cases are applicable because the LMICK escape clause is "standard" rather than "non-standard" as discussed in *Government Employees* and *Haddix*.  It says that because the LMICK policy does not specifically reference an excess clause, it is a standard clause.  This Court believes this to be an overly narrow reading of these cases.

Kentucky courts have made the distinction between "standard" and "non-standard" clauses legally significant, but have not clearly defined the differences between the two.  After reviewing some discussion from other states and the Kentucky cases, it appears that a general or

---

[4] This appears to be important because Kentucky courts have not given precedence to escape clauses that are simply a general exclusion of liability.

standard escape clause is one which creates a general disclaimer of risk solely due to the presence of other insurance.[5]  Such clauses are viewed as contrary to public policy because they could operate to create a complete forfeiture of coverage.  The LMICK escape clause seems more specific, however.  It contemplated that other primary insurance might cover an act or omission prior to the policy period at issue.  It contemplated that if a lawyer committed such an act or omission while an employee at another firm, that firm, if it still existed, would have the primary and prior interest in protecting itself from the consequences of those acts.  Thus, the LMICK escape clause seems to have reasonably contemplated the existence of other primary insurance.  In this manner, it fits the "non-standard" definition, rather than being a general disclaimer of liability.

In these circumstances, the LMICK policy seems to contain a "non-standard" escape clause as defined under Kentucky law.  Such a clause controls over an excess clause under Kentucky law.

## C.

Reasonable public policy and common-sense factors support this analysis.  Great American insured S&H and its present and past employees for all acts committed within the scope of their work for the firm.  S&H sought this protection because the firm, the Named Insured, has liability where one of its employees makes a mistake.  To provide complete protection for S&H, Great American necessarily assumed the coverage risk for all the past acts of such employees.  Similarly, to provide full protection for Strum, Paletti & Wilson, LMICK

---

[5] *See, e.g.*, *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 746 P.2d 1109, 1113 (N.M. 1987) ("It is abhorrent, as a matter of policy, to permit an insurance company to write into its policy, for which it has received premiums, a clause which exculpates itself from liability.").

9

need not insure the acts of the firm's attorneys prior to their joining the firm.  This is so because the law firm would have no legal liability for those prior acts of its employees.  On the other hand, the individual attorneys benefit from LMICK filling any gaps in prior coverage.

To accept Great American's arguments would disrupt this logical relationship and would make it more difficult for insurers to fill the gaps.  Under Great American's theory, instead of simply issuing coverage for the potential gaps in prior coverage subsequent insurers would be responsible – at least in part – for all claims preceding the start of coverage.  Such a result would seem antithetical a public policy, which should favor an efficient means of providing gap coverage for professionals who change jobs and insurance carriers.  Indeed, LMICK's policy provides broader protection in similar circumstances than the Great American policy.  Kentucky courts would probably favor contractual interpretations that encourage this, rather than discourage it.

The result in our case arises not merely from an arbitrary comparison of excess and escape clauses.  Rather, Great American's liability arises from the application of these clauses in the particular factual circumstances where it clearly undertook the primary risk and LMICK clearly foresaw that likelihood as to certain claims and undertook to disclaim coverage.

For all these reasons, the Court concludes that the LMICK escape clause excludes coverage in an appropriate fashion, and, therefore, Kentucky courts would favor enforcement of LMICK's escape clause in these circumstances.

10

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record